IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19 CV 163 MOC WCM

MELISSA DAWN SMILEY, )
)
               Plaintiff, )
)
v. )    MEMORANDUM AND
)    RECOMMENDATION
ANDREW SAUL, )
Acting Commissioner of the Social )
Security Administration, )
)
               Defendant. )
_____ )

    This matter is before the Court on the parties' cross motions for summary judgment (Docs. 10, 11), which have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Following a review of the record, the parties' briefs, and relevant legal authority, the undersigned recommends that Plaintiff's motion for summary judgment be granted and the Commissioner's motion for summary judgment be denied.

I.    **Procedural History**

    In a decision dated May 25, 2007, Plaintiff was found to be disabled beginning January 13, 2004. Transcript of Administrative Record ("AR"), p. 74 (the "Comparison Point Decision" or "CPD").

    On May 8, 2015, the Commissioner found that Plaintiff was no longer disabled. AR p. 76. That determination was upheld upon reconsideration by

1

a State Agency Disability Hearing Officer following a video hearing. AR pp. 113-126. Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ") and a hearing was held on June 11, 2018, in Greenville, South Carolina, where Plaintiff appeared and testified. AR pp. 33-62. Plaintiff was represented by counsel at the hearing.

On June 18, 2018, the ALJ issued an unfavorable decision. AR pp. 12-26. The Appeals Council denied Plaintiff's request for review of that decision on March 25, 2019. AR pp. 1-6. On May 24, 2019, Plaintiff filed the instant action. See Doc. 1. Accordingly, Plaintiff exhausted her administrative remedies before timely filing this action and the ALJ's decision is the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. § 404.981.

## II. Standard for Determining Continuing Disability

"The Commissioner must periodically review whether an individual is entitled to continued benefits and whether there has been medical improvement such that the individual can engage in substantial gainful employment." Young v. Colvin, 1:12-cv-74-MR-DLH, 2013 WL 5727408, at * 2 (W.D.N.C. Oct. 22, 2013) (citing 20 C.F.R. § 404.1589; 20 C.F.R. § 416.989; 20 C.F.R. § 404.1594; 20 C.F.R. § 416.994). "For purposes of this review, 'medical improvement' is defined as any decrease in medical severity of the impairment

present at the time of the most recent favorable disability decision." Ambler v. Saul, 5:18-cv-553, 2020 WL 733183, at * 3 (E.D.N.C. Jan. 24, 2020).

Plaintiff asserts that "'[o]nce a claimant has been found disabled under the [SSA], a presumption of continuing disability arises.'" Doc. 10-1, p. 6 (quoting Sykes v. Colvin, 5:15-cv-228-RN, 2016 WL 3129174, at * 2 (E.D.N.C. June 2, 2016) (citing Bellamy v. Sec'y of Health & Human Servs., 755 F.2d 1380, 1381 (9th Cir. 1985)). However, caselaw from the Fourth Circuit indicates that a prior finding of disability does not give rise to a presumption that the claimant remains disabled. 42 U.S.C. § 423(f); see also 20 C.F.R. § 416.994(b)(1)(vi); Rhoten v. Bowen, 854 F.2d 667, (4th Cir. 1988) ("While section 423(f) provides that terminations must be based on substantial evidence of medical improvement, it does not establish a presumption of continuing disability. Instead, it provides that such a determination must be made on a neutral basis...."); Crawford v. Sullivan, 935 F.2d 655, 656 (4th Cir.1991) (explaining that Section 423(f) "does not establish a presumption of continuing disability."); Rice v. Shalala, 1 F.3d 1234, 1993 WL 309631, at *3 (4th Cir. 1993) (unpubl.) ("The Secretary was thus not required to rebut a presumption of continuing disability."); Young v Colvin, 1:12-cv-74-MR-DLH, 2013 WL 5727408, at * 4 (W.D.N.C. Oct. 22, 2013) ("the Commissioner was not required to rebut a presumption of continuing disability in determining

whether Plaintiff's benefits were subject to termination as the result of medical improvement.").

### III. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (quoting Mastro, 270 F.3d at 176); see also Howell v. Berryhill, No. 1:17-cv-251-RJC, 2019 WL 1302637, at * 3 (W.D.N.C. March 21, 2019) ("The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled his lawful duty in his determination that Plaintiff was no longer disabled under the Social Security Act."). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, the issue before the Court is not whether Plaintiff is no longer disabled but, rather,

4

whether the Commissioner's decision that she is no longer disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## IV. The ALJ's June 18, 2018 Decision

In the June 18, 2018 Decision, the ALJ found that Plaintiff's current impairments were the same as those listed in the May 25, 2007 CPD, but that medical improvement had occurred as of May 1, 2015. AR p. 17. Thereafter, the ALJ determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except she could not climb ladders, ropes, or scaffolds, but she could perform other postural activities occasionally. The claimant should avoid concentrated exposure to fumes, other respiratory irritants, and hazards. The claimant is limited to simple, routine, repetitive work (SVP 1 or SVP 2).

> AR p. 17.

The ALJ also found, based on Plaintiff's RFC, age, and education that there existed jobs Plaintiff could now perform. AR pp. 24-26.

## V. Analysis

Plaintiff's briefing focuses on her musculoskeletal impairments and the related symptoms (particularly pain).[1] Specifically, Plaintiff contends that the ALJ improperly based his finding of medical improvement and his formulation

---

[1] Plaintiff does not argue that the ALJ erred in his consideration of her respiratory or mental impairments.

5

of Plaintiff's RFC on (1) the nature of Plaintiff's medical treatment (which the ALJ considered to be minimal, conservative, and routine); and (2) Plaintiff's activities of daily living. Doc. 10-1, p. 12. Based on her position that the RFC is not supported by substantial evidence, Plaintiff argues that the ALJ's determination that there existed a significant number of jobs in the national economy that Plaintiff could perform was also in error.

### A. Plaintiff's Medical Treatment and Her Activities of Daily Living

Plaintiff's recent medical records support the ALJ's finding that Plaintiff sought and received minimal treatment for her musculoskeletal complaints. On March 24, 2014, Plaintiff reported to the emergency room complaining of chest pain. She reported no back pain however and denied any other complaints. AR p. 861. Plaintiff did not seek medical treatment of any kind again until January 2016, some twenty-one months later, when she sought treatment related to a pregnancy. See AR pp. 946-947. Although medical records indicate Plaintiff complained of back pain while she was pregnant, the treatment appears to have been conservative.[2] Plaintiff's second child was

---

[2] On March 7, 2016, Plaintiff complained of back pain which had increased with pregnancy and made it sometimes difficult to move, cook, clean, or take care of her three-year-old. Her treatment plan at that time was therapeutic exercises, manual therapy, and soft tissue mobilization. AR p. 913. Plaintiff again complained of back pain on March 14, 2016, reporting that she had voluntarily stopped taking controlled substances to avoid addiction to opiate medication. AR p. 944. During the March 14, 2016 examination, Plaintiff had "obvious restrictions of her spine" but normal tone, strength, and movement in all extremities. AR pp. 944-945.

6

born in May 2016, and Plaintiff reported feeling well with no musculoskeletal symptoms at a 4-week post-partum visit. AR p. 933. Plaintiff did not seek medical treatment again until the Spring of 2018, at which time she reported back pain, was prescribed conservative treatment, and showed normal tone, strength, and movement of extremities upon physical exam.[3]

Likewise, there is evidence to support the ALJ's determination that Plaintiff could attend to her personal needs, care for her small children, prepare meals, drive, and perform housework. During a March 16, 2015 Psychological Evaluation, Plaintiff reported that she got up between 8:30 and 10:00 a.m., ate three meals a day and fixed her own food, was able to bathe and dress without help, spent the day watching television or listening to music, did housework but not yardwork, and enjoyed playing with her son and that she read books to him. AR pp. 233-235. A January 11, 2016 Disability Hearing Officer's Report reflects that Plaintiff reported constant back pain and needed to change positions constantly, but also reported she took no pain medications, was doing home treatment exercise and massage therapy, cared for her three-year-old son and would go outside with him, rested while doing chores, and

---

[3] On April 4, 2018, Plaintiff reported severe and chronic back pain that was helped somewhat by Tylenol, hot baths, massages, and stretching. She was prescribed Tylenol, ibuprofen, heat, stretching, and a TENS unit. AR p. 938. A May 10, 2018 treatment note reflects conservative treatment with NSAIDS/Tylenol and home exercises and that Plaintiff had experienced improvement with osteopathic manipulation. AR p. 941.

could lift about thirty pounds. AR pp. 106-107; see also AR p. 937 (April 4, 2018 treatment note reflecting that Plaintiff reported she did not get out of the house much "because she has to take care of her children and her sister's children most of the time.").

### B. Evaluation of Medical Improvement

As discussed above, "medical improvement" occurs when there has been a decrease in the medical severity of the impairments from which the claimant suffered at the time he or she was most recently determined to be disabled. This determination must be based on "changes (improvement) in the symptoms, signs, or laboratory findings…." 20 C.F.R. § 416.994(b)(1)(i). Although there is no presumption of continued disability, "the Commissioner bears the burden 'to show that medical improvement has occurred and that the improvement relates to the claimant's ability to work." Daniel v. Berryhill, No. 5:150cv074, 2018 WL 7051034, at * 2 (W.D. Va. Dec. 28, 2018) (quoting Edwards v. Astrue, No. 4:12cv5, 2012 WL 6082898, at *3 (W.D. Va. Dec. 6, 2012) (citing Lively v. Bowen, 858 F.2d 177, 181 n.2 (4th Cir. 1988)).

Here, the ALJ provided the following analysis in support of his conclusion that medical improvement occurred as of May 1, 2015:

> The record shows that the claimant had congenital scoliosis and at age 12, the claimant underwent in situ posterior fusion of the C6-T2 vertebrae, without instrumentation. The claimant subsequently experienced chronic pain from the neck to mid-

8

> scapular region and in the hip. At the time of the CPD, the claimant was taking narcotic medication, as well as, muscle relaxant medicine to help manage her spinal pain. The claimant also necessitated the regular use of an inhaler to manage symptoms of asthma, and she was diagnosed with a learning disorder, PTSD, ADHD, and depression.
>
> However, the record shows that since May 1, 2015, the claimant has sought and necessitated minimal treatment for her alleged musculoskeletal, respiratory, or psychological impairments. The treatment that she has received has been largely conservative and routine in nature, and she has not necessitated frequent emergency room visits, inpatient hospitalization, and specialty intervention. The claimant's clinical examinations have been absent evidence that the claimant's impairments preclude all work, and the record shows that the claimant is able to independently attend to her personal needs, care for her small children, prepare meals, drive, and perform housework.
>
> AR p. 17.

"In analyzing whether medical improvement has occurred, an ALJ must evaluate not only the current medical evidence, but also the medical evidence upon which the claimant's disability was premised." Ambler v. Saul, 5:18-cv-553, 2020 WL 733183, at * 3 (E.D.N.C. Jan. 24, 2020). That is, "the ALJ may not simply rely on the current medical evidence, but must compare the current medical severity of that impairment(s) which was present at the time of the [CPD] to the medical severity of [the] impairment(s) at [the] time [of alleged improvement]." Daniel, 2018 WL 7051034, at * 8 (internal citations omitted). "Nor is it sufficient for the ALJ to provide a mere summary of earlier records.

9

Instead, a proper finding of medical improvement requires examination of reports and records generated before the CPD." Daniel, 2018 WL 7051034, at * 8 (internal citations omitted).

Here, the ALJ's analysis of Plaintiff's medical improvement is deficient. First, the May 25, 2007 CPD opinion anticipated that Plaintiff could experience medical improvement *with* appropriate treatment.[4] In the June 18, 2018 Decision, however, the ALJ premised a finding of medical improvement on a *lack* of treatment. Second, although the ALJ engaged in extensive discussion of Plaintiff's medical records from March 2014 forward when developing Plaintiff's RFC (discussed below), he did not evaluate the medical records upon which the CPD was based. See AR pp. 18-19.[5] That is, though the ALJ correctly noted that Plaintiff's recent "conservative and routine" treatment had "not necessitated frequent emergency room visits, inpatient hospitalization, and specialty intervention," the ALJ did not analyze the medical records that formed the basis of the May 25, 2007 CPD to explain how such treatment is

---

[4] In the May 25, 2007 CPD, the ALJ concluded that "[m]edical improvement is expected with appropriate treatment" and recommended a continuing disability review in one year. AR p. 75.

[5] The ALJ did state that Plaintiff was previously taking narcotic medication and a muscle relaxant to manage spinal pain, but he did not cite to the medical evidence reflecting that treatment. While Plaintiff's earlier medical records are included in the administrative record, it is improper for the Court in the first instance to review and compare these medical records to those analyzed by the ALJ. See Radford v. Colvin, 734 F.3d 288, 296 (4th Cir. 2013).

different from the treatment Plaintiff previously received. See Daniel, 2018 WL 7051034, at * 8 (finding medical improvement analysis deficient because ALJ did not actually compare the medical evidence of claimant's condition at the time of the CPD to the current severity of his condition.); Ambler, 2020 WL 733183, at * 4 ("Without a comparison of the medical records in existence at the time of the CPD and Plaintiff's current medical records, the court is unable to determine whether substantial evidence supports the ALJ's finding that medical improvement occurred.").[6]

## C. Evaluation of Plaintiff's RFC

Once medical improvement is found, the ALJ considers whether such improvement relates to Plaintiff's capacity to work, and whether Plaintiff now has the functional capacity to work. See 20 C.F.R. § 416.994(b)(1)(iv)(A) ("A decrease in the severity of an impairment as measured by changes (improvement) in symptoms, signs or laboratory findings can, if great enough, result in an increase in the functional capacity to do work activities."). Because the ALJ's analysis of medical improvement not sufficient, remand will be

---

[6] Remarks made by the ALJ during the June 11, 2018 hearing also indicate that the ALJ focused primarily on Plaintiff's current capabilities rather than comparing the records supporting the CPD with the more recent records. See AR p. 52 (remarking with respect to Plaintiff's belief she could not perform certain jobs: "You know all this is just well and good but unless you try it means nothing to me. You're not even trying so don't tell me you can't do something until you try to do it."); p. 53 ("Ms. Smiley, I've seen people a lot worse, a lot older do things. You are young. You've never tried. I'm sorry.").

recommended on that basis. However, the undersigned has also considered Plaintiff's related argument that the ALJ erred in developing her RFC, and specifically that the ALJ incorrectly evaluated Plaintiff's credibility (i.e., her subjective complaints of pain) and failed to conduct a function by function analysis.

### 1. Evaluation of Plaintiff's Complaints of Pain

"[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996) (discussing 20 C.F.R. § 404.1529(a) & 416.929(a)). First, there must be objective medical evidence showing the existence of an impairment that could reasonably be expected to produce pain or the other symptoms alleged. Id. Once this threshold step is met, the ALJ evaluates the intensity and persistence of a claimant's pain, and the extent to which it affects the claimant's ability to work. Id. at 595. At this second step, a claimant's allegations regarding the severity and persistence of her pain may not be dismissed "because objective evidence of the pain itself (as opposed to the existence of an impairment that could produce the pain alleged), such as inflamed tissues or spasming muscles, are not present to corroborate the existence of pain." Id.

"That is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence

of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are." Id.; see also Sykes, 2016 WL 3129174, at * 4. The type of treatment a claimant receives (including the medication prescribed and taken by a claimant) as well as a claimant's daily activities are appropriately considered by an ALJ when considering a claimant's subjective complaints of pain and the extent to which a claimant's alleged pain impairs her ability to work. See Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1993); Dunn v. Colvin, 607 Fed. Appx. 264, 274-275 (4th Cir. 2015) (unpubl.) ("if all that the claimant needs is conservative treatment, it is reasonable for an ALJ to find that the alleged disability is not as bad as the claimant says that it is."); Brownlee v. Saul, 1:18cv642, 2019 WL 3858652, at * 9 (M.D.N.C. Aug. 16, 2019) (plaintiff's subjective complaints were not entirely credible based on medical records reflecting full range of motion and full strength, claimant's testimony that he only took over-the-counter medication for his pain, conservative prescribed treatment, and claimant's activities of daily living); Gaston v. Berryhill, 1:17-cv-182-RJC, 2018 WL 3873593, at * 6 (W.D.N.C. Aug. 15 2018) (rejecting argument that ALJ improperly relied on the absence of medical records when evaluating claimant's functional limitations).

In this case, although Plaintiff's recent medical treatment and daily activity alone cannot support the ALJ's finding of medical improvement, this treatment and activity may appropriately be considered when evaluating

13

Plaintiff's current subjective complaints of pain. In that regard, the ALJ appropriately and correctly considered the nature and frequency of Plaintiff's medical treatment and Plaintiff's daily activity when developing her RFC.

### 2. Function by Function Assessment

Plaintiff also argues that the ALJ failed to conduct a function by function analysis of Plaintiff's abilities and failed to include a narrative discussion detailing how the evidence in the record supports the RFC assessment. Plaintiff contends that the ALJ "essentially gave no explanation of how [the medical evidence] translates into the capacity to perform light work (i.e., standing and walking for six hours out of an eight-hour workday and lifting 20 pounds)." Doc. 10-1, p. 20.

When developing Plaintiff's RFC, the ALJ explained that he gave "great weight" to the opinions of state agency consultants who opined that Plaintiff had the residual functional capacity to occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for 6 hours in an 8 hour day, and sit for 6 hours in an 8 hour day. See AR pp. 23, 703, 725.

State agency consultants "are highly qualified…physicians and psychologists who are experts in the evaluation of medical issues in disability claims…." SSR 96-6p, 1996 WL 374180, at * 2 (July 2, 1996). Although "[a] 'non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted *by*

14

*all of the other evidence in the record*[,]' 'the testimony of a nonexamining physician can be relied upon when it is consistent with the record.'" Tanner v. Commissioner of Social Security, 602 Fed. Appx. 95, 101 (4th Cir. 2015) (unpubl.) (quoting Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986) (emphasis in Smith)).

In relying on the functional capabilities developed by the state agency consultants, the ALJ noted Plaintiff's conservative and minimal treatment for her back pain, and that she exhibited full strength and sensation in her extremities with no notable balance difficulties or gait abnormalities. AR p. 23. Plaintiff has not explained how the exertional limitations developed by the state agency consultants are contradicted by all the other evidence in the record.

Accordingly, the ALJ could properly rely on the opinions of these consultants when developing Plaintiff's RFC.

### D. The ALJ's Finding that Plaintiff Could Perform a Significant Number of Jobs in the National Economy

Finally, Plaintiff argues that because the ALJ's RFC finding was in error, the vocational expert was not "provided with an accurate residual functional capacity" and therefore the ALJ erroneously determined that jobs existed that Plaintiff could perform. Doc. 10-1, p. 24.

As discussed above, substantial evidence supports the ALJ's development of Plaintiff's RFC. The ALJ could therefore rely on the vocational expert's testimony, which was based on that RFC, to conclude there existed jobs in the national economy which Plaintiff could perform. See Graves v. Colvin, 12cv643, 2015 WL 5167240, at * 6 (M.D.N.C. Sept. 3, 2015) ("The VE was qualified to determine which jobs Mr. Graves could perform, given the limitations set forth by the RFC, and the ALJ was entitled to rely on the VE's testimony."); 20 C.F.R. § 404.1560(b)(2).

## VI. Recommendation

Considering the foregoing, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment (Doc. 10) be **GRANTED** and that the Commissioner's motion for summary judgment (Doc. 11) be **DENIED**.

Signed: May 15, 2020

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).